# Eline *v.* Western Maryland Railway Company, Appellant.

*Negligence—Railroads—Grade crossing—Collision—Automobile —Death of passenger—Passenger husband of owner—Passenger's duty to warn driver of danger—Evidence—Res gestæ—Charge— Contributory negligence—Case for jury.*

1. Where a passenger in an automobile having opportunity fails to warn the driver of a known danger and to protest against incurring it, he is guilty of negligence.

2. A person riding in an automobile is not liable for its management because it is owned by his wife, if at the time it is in the possession and control of another as bailee.

3. The negligence of the bailee of an automobile is not imputable to the owner thereof who is not present.

4. While the fixed duty to stop, look and listen before going upon a railroad track applies to the driver under all circumstances, yet the duty of calling upon him to do so devolves upon the passenger only where he has knowledge of the crossing, either acquired at the time or previously.

5. The testimony of four surviving occupants of an automobile which was struck by one of the defendant's trains at a railroad grade crossing, that neither whistle nor bell was sounded, is more than negative testimony and although contradicted renders the question of defendant's negligence one of fact for the jury.

6. The duty of a driver of an automobile to stop before crossing railroad tracks is unbending, and darkness is no excuse for failure to perform it.

7. In an action against a railroad company to recover for the death of plaintiff's husband occasioned by being struck by one of defendant's trains while a passenger in an automobile, where it appeared that deceased was in ill health and that the automobile, which was the property of the plaintiff, had been loaned to and was being driven by a friend of the family; that decedent was seated in the front seat next to the driver; that the driver did not stop before making the crossing; that deceased was the first one to notice the approaching train and immediately notified the driver but not in time to avoid the collision, and deceased was thrown out and killed; that the four surviving occupants of the automobile testified, although contradicted by defendant's witnesses, that no warning was given of the approach of the train by bell or whistle and no headlight was burning, the questions whether the driver or

decedent had actual control of the automobile and the negligence of the defendant and contributory negligence of decedent were for the jury and a verdict and judgment for the plaintiff will be sustained.

8. Where a collision between an automobile and locomotive was so violent as to throw a passenger in the former to the ground where he is found dead a moment later, the court did not err in charging that "the death, I think from the testimony, you can clearly find was the result of the collision."

9. The alleged declarations of a member of an automobile party made three-quarters of an hour after an accident are too remote to constitute a part of the res gestæ.

Argued June 6, 1918. Appeal, Nos. 28 and 51, Jan. T., 1918, by defendant, from judgment of C. P. Adams Co., April T., 1915, No. 169, on verdict for plaintiff in case of Annie K. Eline v. Western Maryland Railway Co. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before McPHERSON, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict for the plaintiff for $10,000 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment non obstante veredicto.

*Richard E. Cochran,* with him *George S. Schmidt* and *Charles D. Duncan,* for appellant.

*J. Donald Swope,* with him *J. Cookman Boyd,* for appellee.

OPINION BY MR. JUSTICE WALLING, July 17, 1918:

This action in trespass is for the death of plaintiff's husband, J. Frank Eline, resulting from a grade crossing accident. Mr. and Mrs. Eline resided at Baltimore, and

he, being in ill health, spent the summer of 1913 on a farm about fifteen miles from that city. While there an automobile trip was arranged for himself and four gentlemen friends, including Frank D. Rogers, to be taken in Mrs. Eline's car. Mr. Rogers and the Elines were intimate friends and he often went driving with them in her car, and on such occasions uniformly acted as chauffeur, Mr. Eline being unable to do so. According to the evidence for plaintiff she loaned the car to Mr. Rogers for the proposed trip, placing it entirely in his charge so as to constitute him a bailee thereof. This was because of her husband's ill health and lack of ability to manage the car. The party started on the morning of September 12, 1913, drove to Harper's Ferry, from there to Emmitsburg and arrived at Gettysburg the next day, where they spent some time and in the afternoon left for York, passing through Abbottstown. About 7:45 p. m. they came to Smyser's Crossing where defendant's track crossed the turnpike at grade. Mr. Rogers was then driving the car, which he had done during the entire trip, and they were all giving attention to the movements of the car and to whatever might promote the safety of the journey, Mr. Eline more especially so as he sat by the driver and was cautiously looking ahead. They crossed a culvert about sixty feet before reaching the track; the automobile was moving some ten or twelve miles per hour and the darkness there was increased by a mist or fog. The deceased was the first to discover a passenger train approaching from their right and gave immediate alarm, which Mr. Rogers heeded and turned the automobile suddenly to one side, but not in time to avoid a collision by which Mr. Eline was killed. There was no light on defendant's engine and no warning signals given. According to defendant's evidence the headlight was burning, proper crossing signals were given both by whistle and bell, and it was a bright moonlight night and those in the automobile had an unob-

structed view of the track and approaching train. The trial judge submitted the case to the jury and later entered judgment for plaintiff on the verdict, from which defendant appealed.

We have carefully examined the assignments of error and entire record but find no reversible error. The four surviving occupants of the automobile, as witnesses for plaintiff, positively asserted that neither whistle was blown nor bell rung to warn of the train's approach, and also that the headlight was not burning. This was more than negative testimony and although contradicted made the question of defendant's negligence one of fact for the jury: Winterbottom v. Philadelphia Ry. Co., 217 Pa. 574; Buckman v. Philadelphia & R. Ry. Co., 232 Pa. 351.

Mr. Rogers, in driving the car so near the track as to collide with the passing train without having stopped to look and listen, was clearly negligent. The duty to so stop is unbending and darkness is no excuse for failure to perform it: Anspach v. Philadelphia, Etc., Ry. Co., 225 Pa. 528. But there was competent evidence which the jury credited that he was bailee of this car and had exclusive control of it, and was not the servant of Mr. or Mrs. Eline, and, if true, Roger's negligence would not defeat plaintiff's action. The fact that Eline and Rogers were engaged in a common purpose would not of itself cause the negligence of one to be imputed to the other. See Dunlap v. Philadelphia R. T. Co., 248 Pa. 130. Under the evidence, it was a question for the jury whether Mr. Rogers or the deceased had actual control of the automobile; while the latter suggested the route, it does not appear that he dictated the manner of driving the car. A man riding in a car is not liable for its management because owned by his wife, if at the time it is in the possession and control of another as bailee. Neither is the negligence of the bailee under such circumstances imputable to the owner of the car. See Gibson v. Bessemer & L. E. R. R. Co., 226 Pa. 198.

Mr. Eline was responsible for his own negligence even if riding in a vehicle driven and controlled by Rogers. A passenger who, having opportunity, fails to warn the driver of a known danger, and to protest against incurring it, is guilty of negligence. It was Mr. Eline's duty to use reasonable care and watchfulness for the protection of himself and his companions, and, so far as he knew of or could discover approaching danger, to warn the driver. If he knew they were approaching this grade crossing, or by the exercise of reasonable care should have known it, in time to warn Mr. Rogers thereof and failed to do so he was negligent. In other words, a passenger who, knowingly and without protest, suffers the chauffeur to drive an automobile upon a railroad track without stopping to look and listen, is negligent. See Hardie v. Barrett, 257 Pa. 42; Kunkle v. Lancaster County, 219 Pa. 52; Trumbower v. Lehigh Valley T. Co., 235 Pa. 397; Township of Crescent v. Anderson, 114 Pa. 643; Winner v. Oakland Township, 158 Pa. 405. The duty of giving warning depends upon the knowledge of the passenger, whether acquired at the time or previously. There is no presumption that Mr. Eline knew in advance of the crossing, but Mr. Rogers says he and the deceased had been over this road together about five times. Assuming the truth of that statement, which was for the jury, yet there is nothing to show when or under what circumstances that occurred; whether they had passed over the road one year before or many, or whether by day or night does not appear. So, while Mr. Eline might be assumed to know there were grade crossings on this road, it cannot be affirmed as matter of law that he was bound to know at his peril that there was one down by the culvert where the mist had gathered; that was a matter for the jury. As plaintiff's evidence indicates that neither the track nor train could be seen on that occasion, except at close range, and that the deceased was watching and was the first to discover and warn of the

danger, whether he should have kept a sharper lookout or done something more was for the jury. The evidence is that at the beginning of the trip he had cautioned all the members of the party to keep a lookout for railroad crossings. While the fixed duty to stop, look and listen before going upon a railroad track applies to the driver under all circumstances, yet the duty of calling upon him to do so devolves upon the passenger only where he has knowledge of the crossing. See Wanner v. Philadelphia & R. Ry. Co., 261 Pa. 273, and Azinger v. Pennsylvania R. R. Co., 262 Pa. 242, also Wachsmith v. B. & O. R. R. Co., 233 Pa. 465; Senft v. Western Maryland Ry. Co., 246 Pa. 446. In Henderson v. Pennsylvania R. R. Co., 179 Fed. Rep. 577, the plaintiff, who was held legally guilty of negligence in failing to warn the driver, not only sat by him but actually saw and knew of the crossing. And in Vocca v. P. R. R. Co., 259 Pa. 42, plaintiff's evidence was that he did warn the chauffeur, and we held the question of his contributory negligence was for the jury. The extent to which suggestions should be made to the chauffeur depends upon the circumstances, and the duty of one passenger as to that may differ from that of another, while each must exercise ordinary care for his own safety.

When a locomotive so violently collides with an automobile as to crush the skull of a man seated therein and throw him to the ground where a moment later he is found dead, it is not error for the trial judge to tell the jury that, "The death, I think from the testimony, you can clearly find was the result of the collision."

The alleged declarations of a member of the automobile party, made three quarters of an hour after the accident, were properly rejected as too remote to constitute a part of the res gestæ: Briggs v. Railroad & Coal Co., 206 Pa. 564.

The case was carefully tried and well considered by

the court below and there is nothing further that seems
to require discussion.

The assignments of error are overruled and the judg-
ment is affirmed.